

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PAUL H. SMITH AND TRENA G. SMITH                                    PLAINTIFFS

VERSUS                                              CIVIL ACTION NO. 1:04cv73WJG-JMR

FORTIS INSURANCE COMPANY                                            DEFENDANTS

MEMORANDUM OPINION

This matter comes before the Court, by motion of the Defendant, Fortis Insurance Co., [Fortis], for summary judgment [18-1] pursuant to Federal Rule of Civil Procedure 56(c) with regard to the claims of the Plaintiffs, Paul H. Smith and Trena G. Smith, for breach of contract, intentional/negligent infliction of emotional distress, fraud and misrepresentation, and punitive damages. Plaintiffs' complaint was filed January 14, 2005, in the Circuit Court of Harrison County Mississippi and was removed to this Court February 13, 2004. (Ct. R., Doc. 1.)

The Smiths submitted an application for health insurance coverage to Fortis on June 16, 2001. (Ct. R., Doc. 1, Exh. 1.) At that time the Smiths had one child who was delivered via cesarean section. (*Id.*) The application requested a maternity rider to be added to cover subsequent child birth. (*Id.*) The Smiths agreed to pay an extra fee of $200.02 per month for additional coverage under the maternity rider. (Ct. R., Doc. 1, p. 2.) The insurance policy became effective on July 1, 2001. (*Id.*, Exh. 1.) On July 13, 2001, the Smiths signed a "Special Exception Rider" which stated that caesarean section delivery and complications therefrom would not be covered under the policy. (*Id.*, Exh. 3.) The added costs for the maternity benefit remained the same. (Ct. R., Doc. 1, p. 2.) After participating in a tele-conference with Fortis

whereby it was explained that the special exceptions rider only excluded payment for any expenses above those associated with a normal vaginal delivery, the Smiths signed the rider. (Ct. R., Doc. 18, Exh., 2, p. 6.)

Mrs. Smith became pregnant during March 2003, at which time her physician, Dr. Pappas, informed her that due to the first caesarean any following deliveries would also be caesarean section deliveries. (*Id.*, p. 7.) The Smiths became concerned about their coverage and made many phone calls to Fortis to ensure that the costs of a normal pregnancy would be covered. (*Id.*, p. 9.) The Smiths also attempted to terminate the special exception rider, but termination was not permitted by Fortis. (*Id.*, p. 7.) The Smiths did not record the names of any of the representatives with whom they spoke. (*Id.*, p. 9.) The Smiths were assured on various occasions that the costs associated with a normal pregnancy would be covered, however, when Memorial Hospital at Gulfport [Memorial] attempted to have the Smiths pre-approved for delivery, the hospital was told that the Smiths' did not have insurance coverage. (*Id.*, p. 9-10; Ct. R., Doc. 18, Exh. 7, pp. 1-6.) On a subsequent call to the insurance company a representative stated to the hospital that the Smiths' policy would cover any costs associated with a normal pregnancy, but not any additional costs associated with a caesarean section. (Ct. R., Doc. 18, Exh. 7, p. 9.)

Shortly after the child was born on May 29, 2003, Memorial, Dr. Pappas, and Gulfport Anesthesia Services sent claims to the insurance company. (Ct. R., Doc. 1, p. 3.) All of the claims referred to caesarean section delivery and were therefore denied. (Ct. R., Doc. 18, Exh. 2, p. 11.) After the claims were denied the Smiths received bills requesting payment. (*Id.*, Exh. 7, p. 7.) The Smiths and Memorial filed letters of appeal requesting coverage for the claims on July

2

2, 2003, and July 9, 2003, respectively. (Ct. R., Doc. 19, p. 4.) Fortis denied both appeals on August 28, 2003. (Ct. R., Doc. 18, Exh. 8.) On October 30, 2003, Memorial filed a first level grievance with Fortis. (Ct. R., Doc. 19, p. 3.) On November 26, 2003, Fortis decided that $4,379.86 of the claim could be covered, after it was determined which costs were associated with a normal pregnancy. (*Id.*) Fortis also covered an additional day of hospital stay, which was not related to normal pregnancy. (Ct. R., Doc. 18, Exh. 10.) No evidence exists to show that any amended claims were filed either by the doctor or by the anesthesiologist.

The Smith's filed a complaint with the Circuit Court of Harrison County, Mississippi on January 14, 2004. (Ct. R., Doc. 1.) On September 23, 2004, Fortis paid $3,000.00 of the $3,334.00 bill from Dr. Pappas for costs associated with a normal pregnancy. (Ct. R., Doc. 18, Exh. 13.) Fortis also paid $640.58 in interest to the Smiths. Fortis has not to date covered any of the anaesthesiologist's bill. (*Id.*)

The Smiths contend that Fortis breached the insurance policy agreement, because Fortis did not make any payment on the claims until after 45 days from submission of the claim. (Ct. R., Doc. 20, pp. 7-8.) They also claim that Fortis breached the insurance contract, because they did not pay all of the differential costs between a vaginal and caesarean delivery. (Ct. R., Doc. 1, p. 4.) The Smiths further claim that Fortis committed a tortuous breach of contract, because Fortis allegedly knew it would not pay the claims but collected payment from them, allowed representatives to deceive the Smiths by promising coverage, and issued misleading and deceptive riders to the insurance policy. (*Id.*) In addition the Smiths alleged that Fortis acted fraudulently and misrepresented its services and that they suffered intentional infliction of emotional distress because of Fortis' actions. (*Id.* at 6.) Finally the Smiths contend that punitive

3

damages should be awarded, because Fortis acted in bad faith in denying their claim. (*Id.* at 6-7.)

For the following reasons Fortis claims it is entitled to summary judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c): Fortis contends that the Smiths received all benefits to which they were entitled under the insurance policy and that even if it is found that they did not fulfill all of their obligations, the Smiths were not harmed by Fortis' breach. (Ct. R., Doc. 19, p. 7. ) Fortis further argues that the Smiths provided insufficient evidence to substantiate a finding of intentional infliction of emotional distress, and that Fortis did not act fraudulently or make any false representations to the Smiths. ( *Id.,* pp. 10-11, 14.) Lastly, Fortis contends that they had an arguable reason to deny the claim, because the language of the Special Exception Rider required denial (*Id.* at 15.)

## Standard of Review

A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Haynes v. Prudential Health Care,* 313 F.3d 330, 333 (5th Cir. 2002). Under Rule 12(b)(6), a "complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Hoffman v. Kramer,* 362 F.3d 308, 319 (5th Cir. 2004).

A district court may properly grant a motion for summary judgment when, after viewing the facts in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Deas v. River West, L.P.*, 152 F.3d 471, 475 (5th Cir.

4

1998), *cert. denied* 527 U.S. 1044 (1999). "[S]ummary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 356 (1991) (citation omitted). The record must show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *J&B Entm't, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 365 (5th Cir. 1998).

Discussion

I.  <u>Breach of Contract</u>

It is well settled under Mississippi state law that when interpreting insurance contracts the contract should be construed against the insurance company and that any ambiguities shall be resolved in favor of the insured and in finding coverage. *Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326 (5th Cir. 1999); *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss. 1994); *Government Employees Insurance Company v. Brown*, 446 So.2d 1002, 1006 (Miss. 1984); *Williams v. Life Insurance Company of Georgia*, 367 So.2d 922, 925 (Miss. 1979); *Monarch Insurance Company of Ohio v. Cook*, 336 So.2d 738, 741 (Miss. 1976).

The issue becomes whether the Smiths' allegations of breach, taken as true, are sufficient to support a claim against Fortis for breach of contract. Both parties agree that the Special Exception Rider in question, which limited the amount of maternity benefits available, only excluded payment for costs associated with a cesarian section that were above and beyond those associated with a normal delivery. (Ct. R., Doc. 29, p. 2.) In other words it is undisputed that all costs associated with a normal delivery would be covered under the insurance policy. Therefore both parties agree to the meaning of the portions of the agreement in question. (*Id.*) The

5

question then becomes, whether Fortis substantially fulfilled its duties under the insurance contract.

To succeed on a breach of contract claim the plaintiff has the burden of proving by a preponderance of evidence the existence of a valid and binding contract, that the defendant has broken or breached the contract, and that the plaintiff has been thereby damaged monetarily. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003); *Warwick v. Matheney*, 603 So.2d 330, 336 (Miss. 1992); *Crawford v. Ellzey*, 57 So.2d 502 (Miss. 1952). In an insurance agreement the insured should receive the full benefit for which he has paid. *Hartford Accident & Indemnity Co. v. Bridges*, 350 So.2d 1379, 1381 (Miss. 1977).

It is undisputed that a valid contract was entered into between the parties. (*Id.*) The Smiths, however, have failed to prove by a preponderance of the evidence that Fortis breached the contract because they have not established that Fortis failed to fulfill any of the duties it owed to the Smiths under the agreement. *Sam's Style Shop v. Cosmos Broadcasting Corp.* 694 F.2d 998, 1005 (5th Cir. 1982). On the issue of whether Fortis paid all claims pursuant to the agreement, the applicable terms of the contract are as follows:

> It is hereby understood and agreed that the certificate to which this rider is attached is amended to provide that the policy does not cover anything of which Caesarean Section Delivery or any Complication Thereof is the sole, contributory, primary, or secondary cause.

(Ct. R., Doc. 18, Exh. 3.) It is undisputed that Fortis originally denied all of the claims it received regarding the caesarian delivery of the Smiths' second child. (Ct. R., Doc. 19, p. 3.) After the initial denial of claims by Fortis, Memorial submitted further claims pursuant to the appeal process outlined in the denial letter and eventually sent an itemized bill outlining the charges. Thereafter Fortis determined that it could reconsider the claim and agreed to pay the

portion relating to a normal pregnancy/delivery. (Ct. R., Doc. 18, Exh. 10.) Fortis actually covered more then their required share to Memorial, because they covered the expense of an additional night's stay at the hospital which would not have been required for a normal delivery. (*Id.*) The Court therefore reaches the conclusion that Fortis did not breach the agreement between itself and the Smiths in regard to the statement of Memorial.

Though Dr. Pappas never filed an appeal with Fortis for the denial of his statement, the portion of Dr. Pappas' statement relating to a normal pregnancy/delivery was paid on September 23, 2004, and included an interest payment to the Smiths. The Court finds Fortis did not breach the agreement with the Smiths to pay the doctor bill. (*Id.*, Exh. 13.) Neither party disputes the fact that Fortis has not paid any portion of the anesthesiologist bill. (Ct. R., Doc. 29, p. 2.) The Court determines that non-payment by Fortis of that statement does not constitute a breach of contract as the statement that Fortis received from the anesthesiologist explicitly reads "Description" - "Cesarean Delivery" "Amt. Chg." - "$650.00." According to that statement, the anesthesiologist's charges apply only to the cesarean section and are not covered under the Special Exception Rider portion of the contract. (Ct. R., Doc. 22, Exh. 22.) Neither Dr. Pappas nor the anaesthesiologist ever filed an appeal following the initial denial of their claims.

The Plaintiffs also contends that Fortis breached the contract by failing to make timely payment of the claims pursuant to the terms of the contract. The applicable terms of the contract are as follows:

> We will pay benefits within 45 days of receipt of your claim, necessary medical information, and other information essential to administer the Coordination of Benefits and Subrogation Provisions. Any benefit not paid within 45 days after receipt of the necessary information will be increased by interest at the rate of one and one-half percent per month until your claim is settled.

7

(Ct. R., Doc. 18, Exh. 1.) It is the Court's determination that all necessary information needed to administer the proper amount of benefits to Memorial was not submitted to Fortis until October 30, 2003, after submission of Memorial's first level grievance letter. (Ct. R., Doc. 18, Exh. 10.) Fortis then submitted payment to Memorial on November 26, 2003. Consequently, payment was made on all benefits covered under the policy "within 45 days after receipt of the necessary information" in accordance with the language of the agreement.

Although the payment for Dr. Pappas' services was not made until after commencement of the instant action, the Court fails to find a breach of the agreement, because per the terms of the agreement as stated above the disbursement of funds by Fortis included the interest payment required for all claims not paid within 45 days. (Ct. R., Doc. 22, Exh. 17-18.) On September 23, 2004, Fortis paid $3,000 for "Prenatal Care and Normal Delivery." (*Id.*) Fortis also paid interest from June 4, 2003, in the amount of $640.58 directly to the Smiths, thereby fulfilling its duties under the terms of the agreement. (*Id.*)

For reasons stated above Fortis was not required under the terms of the contract to make any payment to the anesthesiologist for services rendered, because the statement for all such services related directly to the caesarean delivery and not to normal delivery, and were not covered charges under the agreement. (Ct. R., Doc. 18, Exh. 3.)

It should further be noted that the Court cannot find by a preponderance of evidence that the Smiths sustained actual damages as a result of the Defendants actions in regard to the medical claim, because the Smiths have not provided sufficient information to demonstrate that they were in any way monetarily injured. The only evidence set forth by the Smiths to support their claim of monetary injury are a few statements made by them that their credit may have been harmed and

that some work was missed, but no statements, credit reports, or employment time sheets have been produced to substantiate those statements. (Ct. R., Docs. 18, p. 9; 22, Exh. 4, 5, 9.) The Court finds that Fortis did not breach the insurance agreement, and Fortis is entitled to summary judgment on the Smiths' breach of contract claim. For obvious reasons, because the Court has concluded that Fortis is entitled to summary judgment on the Smiths' breach of contract claim, it logically follows that Fortis' is also entitled to summary judgment on the claim of tortuous breach of contract.

II.     Fraud and Misrepresentation:

The Smiths claim both fraud and misrepresentation. In order to sustain a finding of negligent misrepresentation the plaintiff must show:

> (1) a misrepresentation or omission of fact; (2) that the representation or omission immaterial or significant; (3) that the defendant failed to exercise the degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

*Moran v. Fairley*, __So.2d ___, 2005 WL 1091355 *2 (Miss. App. 2005); *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So.2d 1120 (¶ 13) (Miss. 2002) (citing *Spragins v. Sunburst Bank*, 605 So.2d 777, 780 (Miss. 1992). The standard of proof to establish negligent misrepresentation is the preponderance of the evidence standard. *Moran*, 2005 WL 1091355 at *5.

In order to establish the first element, the alleged misrepresentation must concern a past or present fact, not a promise of future conduct. *Moran*, 2005 WL 1091355 at *3; *Spragins*, 605 So.2d at 780. Representations including the term "we will" are insufficient to convey liability for negligent misrepresentation. *Moran*, 2005 WL 1091355 at *3.

9

Fortis promised the Smiths that "they would" cover any costs of a normal pregnancy. (Ct. R., Doc. 19, p. 2.) As such the promise was a promise of future conduct and is therefore insufficient to convey liability for negligent misrepresentation. *Moran*, at *5. The Court finds the Smiths' claim for negligent misrepresentation should be dismissed for failure to set forth a misrepresentation concerning a past or present fact.

As explained herein under the analysis of the breach of contract claim, Plaintiffs have failed to set forth sufficient evidence to prove that they suffered any damages due to their reliance on the statements of Fortis and its representatives. The Court therefore determines that the fifth prong in the negligent misrepresentation test also fails.

Fraudulent or intentional misrepresentation requires a higher degree of proof than negligent misrepresentation. To demonstrate a prima facie case of fraudulent misrepresentation, the plaintiff must prove all required elements by clear and convincing evidence. *Moran*, 2005 WL 1091355 at *4; *Southeastern Med. Supply, Inc. v. Boyles, Monk, and Brickell Ins. Inc.*, 822 So.2d 323 (¶ 39) (Miss. Ct. App. 2002); *cockerham v. Kerr-McGee Chem. Corp.*, 23 F.3d 101, 104 (5th Cir. 1994). The elements that must be established by clear and convincing evidence are: (1) a representation (2) that is false (3) and material (4) that the speaker knew was false or was ignorant of the truth (5) combined with the speaker's intent that the listener act on the representation in a manner reasonably contemplated (6) combined with the listener's ignorance of the statement's falsity (7) and the listener's reliance on the statement as true (8) that the listener had a right to rely on the statement, and (9) the listener's proximate injury as a consequence. (*Id.*) As with negligent misrepresentation, fraudulent misrepresentation must relate to a past or present fact not a promise

for future conduct, unless there was a contractual promise made with the present undisclosed intention of nonperformance *Skrmetta*, 806 So.2d at (¶ 17) (citations omitted).

As stated above, Fortis' promise of payment was a contractual promise of future conduct, and it must be determined whether there was a present undisclosed intention of nonperformance. (*Id.*)

> In order to show by a preponderance of evidence that there was an undisclosed intention of nonperformance, the proof must be so strong that it produces a firm belief or conviction in the mind of the trier of fact as to the truth of the allegations sought to be established.

*Travelhost, Inc. v. BlandfordI*, 68 F.3d 958, 960 (5th Cir. 1995). The Smiths did not present clear and convincing evidence that Fortis intended to deny their insurance claim. The alleged misrepresentation claim is based only on the Smiths' allegation that Fortis promised to pay the costs associated with normal delivery, which Fortis did in fact pay. Therefore the Court can find no misrepresentation as Fortis did perform the promise as agreed upon. (Ct. R., Doc. 22, Exh. 23.) Because Fortis fulfilled all of its duties under the insurance agreement no misrepresentation existed. The Court therefore finds the Smiths' fraud and misrepresentation claims should be denied.

### III. Intentional Infliction of Emotional Distress

The standard of proof for intentional infliction of emotional distress rests on a determination whether the actions by the defendant constitute simple negligence or whether the conduct by the defendant was malicious, intentional or outrageous. *Adams v. U.S. Homecrafters, Inc.*, 744 So.2d 736, 742 (Miss. 1999). If there is outrageous conduct then one who claims emotional distress need only show that the emotional trauma was a reasonably foreseeable consequence of the negligent or intentional act. *Id.*; *Smith v. Malouf*, 722 So.2d 490, 497-498

(Miss. 1998). If, however, the conduct on the part of the defendant was merely negligent, then the plaintiff must show some sort of demonstrative harm and that harm must have been reasonably foreseeable to the defendant. *Adams* at 742; *Greer v. Burkhardt*, 58 F.3d 1070, 1072 (5th Cir. 1995); *Strickland v. Rossini*, 589 So.2d 1268, 1275 (Miss.1991). In either instance the plaintiff must show that he or she actually suffered mental anguish. *Mississippi, et al. v. Williams*, 891 So.2d 160 (Miss. 2004).

The Plaintiffs contend that they suffered mental anguish and emotional stress. (Ct. R., Doc. 20, p. 11.) The only evidence set forth by the Plaintiffs in this regard were merely a few statements made by Mrs. Smith during her deposition where she answered "no" when asked if she had any medical problems because of Fortis' denial of the claims. (Ct. R., Docs. 18, Exh.7, p. 9.) She went on to further say that she had stress from receiving the various statement, but that she did not have any physical manifestations of that stress. (*Id.*) Mr. Smith alleged in his affidavits that he and his wife lost weight, could not sleep, suffered headaches and were under great stress. (Ct. R., Doc. 20, p. 11.) He also stated that he was worried about their credit report but has presented no evidence of a negative credit report. (Ct. R., Docs. 18, Exh. 2, p.16.) The Mississippi Supreme Court has held emotional upset and loss of sleep are not sufficient evidence to support a finding of intentional infliction of emotional distress. *Morrison v. Means*, 680 So.2d 803, 807 (Miss. 1996). These statements, standing alone, made by the Plaintiffs insufficient to establish a claim of intentional infliction of emotional distress based on mental anguish. The Court therefore finds the Smiths' claim for intentional infliction of emotional distress cannot survive Fortis' motion for summary judgment.

IV.  Punitive Damages

Punitive damages are not favored under Mississippi law; "they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Mississippi Power & Light Co. v. Cook,* 832 So.2d 474, 485 (Miss. 2002) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So.2d 620, 622 (Miss. 1988). A plaintiff seeking punitive damages based on a bad faith insurance claim bears the heavy burden of demonstrating to the trial court that there was no reasonably arguable basis for the insurance carrier to deny the claim. *Jenkins v. Ohio Cas. Ins. Co.,* 794 So.2d 228, 232 (Miss. 2001) (*en banc*) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So.2d at 622); *Guy v. Commonwealth Life Ins. Co.,* 894 F.2d 1407, 1412 (5th Cir. 1990); *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d 833, 844 (Miss. 1984). Unless the burden is met, the trial court must grant the insurance carrier's motion for summary judgment on the plaintiff's bad faith claim. *Blue Cross & Blue Shield,* 466 So.2d at 844. "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages . . ." *Liberty Mut. Ins. Co. v. McKneely,* 862 So.2d 530, 533 (Miss. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637, 641 (Miss. 1998)).

The Court must apply a two prong test in determining whether a bases exists for imposing punitive damages. The issue of punitive damages should not be submitted to the jury unless the trial court determines that:

1. The insurer lacked an arguable or legitimate basis for denying the claim, *and*
2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.

13

*Jenkins,* 794 So.2d at 232-233 (quoting *Grimes,* 722 So.2d at 641). "[B]oth [are] questions of law to be decided by the trial judge." *Jenkins,* 794 So.2d at 233 (citing *Bristow,* 529 So.2d at 623). Denial founded upon an arguable basis is proper if it is entered fairly and in good faith and if there is some credible evidence that supports the denial. *American Mfrs. Mut. Ins. Co. v. Cupstid,* 673 F.Supp. 186, 188 (S.D. Miss. 1987) (quoting *Blue Cross and Blue Shield of Mississippi,* 466 So.2d at 851); *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1184. Generally, if the trial court cannot determine whether there was an arguable basis for the denial, then logic dictates that the denial was not issued in bad faith. *Andrew Jackson Life Ins. Co.,* 566 So.2d at 1184 (Miss. 1990); *Pioneer Life Ins. Co. of Ill. V. Moss,* 513 So.2d 927, 930 (Miss. 1987). Courts have also recognized that in the vast majority of cases, "[u]nless the trial judge grants a directed verdict to the insured plaintiff on the contract claim, then, as a matter of law, the insured's carrier has shown a reasonably arguable basis to deny the claim." *Prudential Property and Cas. Ins. Co. v. Mohrman,* 828 F.Supp. 432, 440 (S.D. Miss. 1993) (quoting *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d at 843 and citing *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 872 (5th Cir. 1991)).

The trial court has the discretion to answer the question whether as a matter of law the insurance company has a valid reason to deny the claim. *Jenkins,* 794 So.2d at 233. In this case Fortis was acting within its rights under the "Special Exception Rider" in denying the Smiths' initial claims for coverage. As previously stated in regard to the Smiths' breach of contract claim, the initial claims for coverage filed with Fortis related to the caesarean delivery, and until further information was submitted pursuant to the grievance process Fortis, could not determine which costs were associated only with the normal pregnancy. (Ct. R., Doc. 28, Exh. 25.) Because

the terms of the agreement only provided payment for claims associated with the normal child birth, and initially those costs could not be separated from the total, Fortis had an arguable reason for its denial of the claim.

The Court further finds that the Smiths have submitted no evidence from which reasonable, fair-minded jurors could find that Fortis committed a wilful or malicious wrong or acted with gross and reckless disregard for the Smiths' rights, because Fortis paid all required claims pursuant to the agreement. The Court, therefore, finds that Fortis' motion for summary judgment on the Smiths' claim for bad faith and associated claim for punitive damages should be granted.

## Conclusion

For the aforementioned reasons, the Court finds that the Defendant's motion for summary judgment [18-1] should be granted. A separate Final Judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear their respective costs associated with this motion.

THIS the 7th day of July, 2005.

/s/     *Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE